UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

BRONSON HEALTH CARE
GROUP, INC.,

    Plaintiff,

v.                                          Case No.  1:15-CV-823

STATE FARM MUTUAL                     HON. GORDON J. QUIST
AUTOMOBILE INSURANCE
COMPANY,

    Defendant.

_____/

## OPINION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

      This case involves a dispute between a health care provider—Plaintiff Bronson Health Care Group, Inc. (Bronson)—and a no-fault automobile insurance company—Defendant State Farm Mutual Automobile Insurance Company (State Farm)—regarding payment of Bronson's charges for medical care.  An individual covered both by a health plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, and a no-fault automobile insurance policy issued by State Farm incurred the charges following an automobile accident.  Bronson filed a complaint in state court seeking to recover the charges from State Farm.  Thereafter, State Farm removed the case to this Court on the basis of diversity jurisdiction.

      Bronson and State Farm have filed cross motions for summary judgment on a single issue of law that is dispositive of Bronson's claim for the unpaid medical charges.  The issue is whether language in the ERISA plan is an exclusion or an escape clause.

For the reasons set forth below, the Court will grant Bronson's motion and deny State Farm's motion.

## I. BACKGROUND

The pertinent facts are not in dispute and are set forth in the parties' stipulation of facts. (ECF No. 20.)

On July 14, 2014, Linda Chanthavongsavath was seriously injured in an automobile accident. At the time of the accident, Chanthavongsavath was covered under an ERISA health plan (Plan) issued through United Health Care (UHC) and a no-fault insurance policy issued by State Farm. The State Farm policy contained a coordination of benefits clause, as permitted by Michigan's No-Fault Insurance Act. *See* M.C.L. § 500.3109a. Bronson treated Chanthavongsavath from July 14, 2014 through January 15, 2015, resulting in total charges of $120,543.58.

Bronson billed UHC for the services it provided to Chanthavongsavath, and UHC paid Bronson for such services, less amounts for contractual adjustments, deductibles, coinsurance, and non-covered charges. Bronson did not dispute such payments with UHC, nor did it return any money to UHC for the dates of service. In addition, UHC has not asked Bronson to reimburse UHC for the payments.

Bronson also billed State Farm for the services Bronson provided to Chanthavongsavath. Bronson sent State Farm copies of its billing forms, itemized statements, and medical records detailing the care and treatment provided to Chanthavongsavath from July 14, 2014 through January 15, 2015. State Farm paid Bronson for the patient deductible and coinsurance amounts not paid by the Plan, in the amount of $6,150.92.

The Plan contains the following language relative to exclusions from coverage:

> **We do not Pay Benefits for Exclusions**
> We will not pay Benefits for any of the services, treatments, items or supplies described in this section, even if either of the following is true:

- It is recommended or prescribed by a Physician.

- It is the only available treatment for your condition.

The services, treatments, items or supplies listed in this section are not Covered Health Services, except as may be specifically provided for in *Section 1: Covered Health Services* or through a Rider to the Policy.

. . . .

**P. Services Provided under another Plan**

1. Health services for which coverage is required by federal, state or local law to be purchased or provided through other arrangements. Examples include coverage required by workers' compensation, no-fault auto insurance, or similar legislation.

. . . .

(ECF No. 21-3 at PageID.257–58.)

## II. DISCUSSION

Bronson moves for partial summary judgment, arguing that the provision quoted immediately above is an exclusion that renders the State Farm policy primary for Chanthavongsavath's medical expenses.[1] State Farm also moves for summary judgment, arguing that the quoted provision is an escape clause that is conditioned on the existence of other insurance, thus rendering the Plan liable for Chanthavongsavath's medical expenses under Michigan's No-Fault Act. State Farm further argues that because UHC has already paid Bronson's bills, Bronson has suffered no damages.

As noted above, the Plan is not a self-funded ERISA plan, but instead is funded through the purchase of an insurance policy from UHC. Accordingly, ERISA's so-called deemer clause, 29 U.S.C. § 1144(b)(2)(B), does not exempt the Plan from applicable state law, here Michigan's No-

---

[1]Bronson states that it is moving for partial summary judgment because State Farm has the right to audit Bronson's charges under the No-Fault Act, but has not requested such an audit to date.

Fault Act. *See Am. Med. Sec., Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d 743, 754–55 (6th Cir. 2001) (concluding that ERISA's deemer clause does not exempt insured ERISA plans from § 3109a of Michigan's no-fault act); *Progressive Mich. Ins. Co. v. United Wis. Life Ins. Co.*, 84 F. Supp. 2d 848, 851 (E.D. Mich. 2000) ("[B]ecause the ERISA plan at issue here is funded by an insurance policy as opposed to being self-funded, ERISA's deemer clause will not exempt the plan from § 3109a of Michigan's no-fault law." (footnote omitted)). Accordingly, the Court applies Michigan no-fault law to resolve the instant dispute.

Section 3109a of Michigan's No-Fault Act requires no-fault insurers to offer, at reduced premiums, insurance coverage that coordinates with other insurance that their insureds may have. *See Transamerica Ins. Co. of N. Am. v. Peerless Indus. (MASCO)*, 698 F. Supp. 1350, 1351 (W.D. Mich. 1998). Michigan courts have held that when a no-fault insurance policy and a health insurance policy contain coordination-of-benefits clauses, the No-Fault Act requires that the health insurance carrier be primarily liable for the insured's medical expenses arising from an automobile accident, absent an exclusion of coverage by the health insurance policy. *Auto-Owners Ins. Co. v. Autodie Corp. Emp. Benefit Plan*, 185 Mich. App. 472, 474, 463 N.W.2d 149, 150 (1990) (per curiam). On the other hand, if a health insurance plan "explicitly excludes coverage for injuries received in a motor vehicle accident," there is no other insurance for purposes of § 3109a, rendering the no-fault policy primarily liable. *Id.* at 474–75, 463 N.W.2d at 150.

An escape clause is a type of coordination-of-benefits clause that subordinates benefits when "other insurance" is available to cover the risk. *Peerless Indus.*, 698 F. Supp. at 1351 (citing *Fed. Kemper Ins. Co. v. Health Ins. Admin., Inc.*, 424 Mich. 537, 542, 383 N.W.2d 590, 592 (1986), *overruled by Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 443 Mich. 358, 505 N.W.2d 820 (1993)); *see also Regents of the Univ. of Mich. v. Emps. of Agency Rent-A-Car Hosp. Ass'n*, 122 F.3d 336, 340–41 (6th cir. 1997) (noting that an escape clause "provides that there shall be no

4

liability if the risk is covered by other insurance"). Reference to the existence of other insurance is the crucial distinction between an escape clause, which merely coordinates coverage, and an absolute exclusion of coverage, which excludes coverage altogether. In *Transamerica Insurance Co. of America v. IBA Health & Life Assurance Co.*, 190 Mich. App. 190, 475 N.W.2d 431 (1991), the Michigan Court of Appeals explained the analysis a court should employ to determine whether a particular provision is an exclusion or an escape clause:

> The phrasing of a purported exclusion conditioning coverage on the existence of other insurance is crucial in determining whether it is actually an exclusion or merely an escape type provision. If an exclusion of coverage is stated absolutely in a health insurance policy without reference to other insurance, then it is not conditioned on the existence or nonexistence of other insurance. Such an exclusion provision qualitatively differs from an escape type coordinated benefits provision that is expressly conditioned on the existence of other insurance. Such coverage simply does not exist, regardless of the existence of any no-fault benefit.

*Id.* at 194–95, 475 N.W.2d at 433 (citing *Peerless Indus.*, 698 F. Supp. at 1352). Accordingly, the key inquiry is whether the provision is conditioned on the existence of "other insurance."

As support for its argument that the Plan's exclusion provision is a pure exclusion and not an escape provision, Bronson cites *Cincinnati Insurance Co. v. Engineered Machined Products, Inc. Employee Benefit Plan*, No. 2:11-CV-187, 2012 WL 489196 (W.D. Mich. Feb. 14, 2012), in which this Court held that the following provision was an exclusion rather than an escape provision:

> Charges incurred due to injuries received in an accident involving any motor vehicle for which there is in effect, *or is required to be in effect*, any policy of no-fault insurance.

*Id.* at *2 (emphasis added). Although the provision references the existence of a no-fault policy, this Court reasoned that the italicized phrase "allows for the possibility that no-fault coverage does not exist and thus makes clear that coverage is excluded absolutely in no-fault jurisdictions, regardless of the existence or non-existence of a no-fault policy." *Id.* at *5.

5

Bronson contends that the provision at issue in the instant case, "Health Services for which other coverage is required by federal, state or local law to be purchased or provided through other arrangements," is similar to the language at issue in *Cincinnati Insurance Co.* because it makes clear that so long as no-fault coverage is required by law, coverage under the Plan is excluded regardless of whether a no-fault policy actually is in effect. State Farm sees things differently, arguing that *Cincinnati Insurance Co.* is distinguishable from the instant case because the exclusion in *Cincinnati Insurance Co.* specifically referenced motor vehicle accidents, whereas the Plan's provision does not refer to motor vehicle accidents. State Farm also contends that the Plan's provision "requires other insurance to be in existence." (ECF No. 19 at PageID.73.)

State Farm mischaracterizes the Plan's provision as requiring other insurance to be in existence. The Plan's provision says nothing about the existence of another policy. Instead, it excludes coverage when other coverage is "required by federal, state, or local law to be purchased or provided through other arrangements," regardless of whether such coverage actually exists. For example, because Michigan law requires drivers to have no-fault insurance, the Plan excludes coverage even if a Plan participant is injured in an automobile accident while operating a vehicle without the required no-fault coverage. "Other coverage" would be required by law, but would not exist. Moreover, the fact that the Plan's language does not specifically reference motor vehicle accidents is immaterial; the reference to no-fault auto insurance makes clear that the provision excludes coverage for injuries arising out of a motor vehicle accident. Accordingly, the Court concludes that the disputed provision absolutely excludes coverage and is not an escape clause that is conditioned on the existence of other coverage.

Finally, with regard to State Farm's argument that Bronson has suffered no damage, because the Court concludes that State Farm has primary liability for Chanthavongsavath's medical

expenses, Bronson is entitled to payment from State Farm pursuant to the no-fault policy covering Chanthavongsavath, subject to Bronson reimbursing the Plan for the payments the Plan made to Bronson.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the Plan provision at issue is an absolute exclusion and not an escape-type coordination-of-benefits provision. Therefore, the Court will grant Bronson's motion for partial summary judgment and deny State Farm's motion for summary judgment.

A separate order will enter.


Dated: September 29, 2016          /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE